IN THE UNITED STATES DISTRICT
COURT FOR THE EASTERN DISTRICT
OF TENNESSEE AT CHATTANOOGA

| | |
|---|---|
| JOHN DOE, A MINOR, ) | |
| THROUGH HIS PARENT ) | Case No. 1:25-cv-00011 |
| AND GUARDIAN, ) | Judge McDonough |
| MARY DOE, ) | |
| and MARY DOE, individually. ) | JURY DEMANDED |
| ) | |
|    *Plaintiff* ) | |
| ) | |
| v. ) | |
| ) | |
| PREP PUBLIC SCHOOLS, ) | |
| f/k/a CHATTANOOGA PREP, INC. ) | |
| ) | |
|    *Defendant.* ) | |

# MOTION FOR APPROVAL OF MINOR SETTLEMENT AND ATTORNEYS' FEES

COMES the Plaintiff, John Doe, by and through counsel, and moves this Honorable Court for the approval of a proposed settlement of this matter.

### BRIEF FACTUAL BACKGROUND

John Doe is an 11-year-old young man with Autism who receives special education for his disability at Chattanooga Prep. He remains a student at Chattanooga Prep.

Last year, September 25, 2024, John said "yeah" when he overheard one student (Student A) ask another student (Student B) whether Student B was going to "blow up the school." John had no information about Student B blowing up the school. His "yeah" was limited by his social awareness and his disability of Autism.

Other children told the teacher that John said *he* was going to blow up the school, not Student B. That was equally, if not more, false—John had no intention, plan, ability, etc., to sue any bomb to blow up anything. Nevertheless, the teacher sent John to the principal.

Aware of Tennessee's new "Threat of Mass Violence" law, the principal was unsure of what to do. She referred the situation to the school's Student Resources Officer. What unfolded from there is a typical fact pattern in Tennessee Threat of Mass Violence cases: a literal word or phrase by a young student results in a principal-referral and, not knowing exactly what to do, the principal refers the matter to law enforcement, the SRO.

*What <u>Should</u> Happen—Role of Law Enforcement under Threat of Mass Violence Law*

For *imminent* threats like an active shooter—true emergencies—the school and the SRO must act immediately. There is no time for threat assessment. Similarly, for *obvious* exaggerations or hyperbole, or in cases of the student's intellectual disability preventing understanding, there is no *need* for a threat assessment or law enforcement referral.

But for situations in between those poles, those involving non-imminent threatening language, Tennessee requires a "threat assessment" be conducted to determine whether the threat is a "valid threat." Tenn. Code Ann. § 49-6-3401(g)(5). As the most prominent expert in the field of threat assessments explains, the threat assessment team "is ultimately concerned with whether the student poses a threat, not whether the student has *made* a threat. Any student can make a threat but relatively few will engage in behavior that indicates the planning and preparation necessary to carry out the threat."[1]

---

[1] Dewey Cornell, *Comprehensive School Threat Assessment Guidelines*, Second Edition, p. 2.

Determining the validity of threats of teens and tweens requires training of school administration about when to make referrals to SROs. Schools and Sheriff's departments typically operate under a Memorandum of Understanding (MOU) for SROs. These MOUs recognize that an SRO is "significantly different" than a traditional police officer making probable cause arrests. SROs also require skills outside of traditional law enforcement training. And that includes school-side obligations of being part of a threat assessment team. Tenn. Code Ann. § 49-6-2701(b).

Because teens say all sorts of things, use figurative language, and have angry outbursts, a "threat assessment" team must determine whether an alleged threat of mass violence is "*valid*." Tenn. Code Ann. § 49-6-3401(g)(5)(emphasis added). Here, the SRO must be asked to act as a team member, Tenn. Code Ann. §49-6-2701(a), as opposed to conducting a custodial interrogation for arrest.

If the threat assessment team determines a non-imminent threat is "valid," then, at that point, it must be reported outside of the team to law enforcement for probable cause considerations of a crime. Tenn. Code Ann. §49-6-4301(a)(3). By contrast, if the threat assessment team determines the threat is *not* valid, then the student is to be returned to his school and cannot be expelled ("expelled" meaning removed from his zoned school). Tenn. Code Ann. §49-6-3401(g)(5), (6).

To sum it up, true emergencies like active shooters or imminent danger should be referred immediately to law enforcement in their traditional law enforcement capacity. And obvious figures of speech where the speaker is not truly planning to commit mass violence, do not require threat assessments. Otherwise, a threat assessment team must be convened to consider the *validity* of the

3

threat. Here, the SRO is acting as one member of the team. If the threat is valid, then law enforcement is engaged to consider a crime. Otherwise, the student returns to class.

### *What Actually Happened—and Too Often Does Happen*

In this case, Chattanooga Prep's principal referred an obviously non-imminent threat of a disabled student, John Doe, to the SRO instead of just rejecting it (or asking for a threat assessment). The SRO, in turn, assumed the posture of traditional police officer, not a threat assessment team member. That is, the SRO assumed the worst—that the head of the school was reporting a crime of mass violence to him. So the SRO tracked down John Doe at a local restaurant, charged him with a felony of mass violence, and took him to juvenile detention.

This illustrates the importance of procedure and training. John Doe made no real threat. He *couldn't* due to his disability. Certainly nothing was imminent. And if there were any doubt (there wasn't), no "threat assessment" team was convened to determine validity. Not knowing how to handle the Threat of Mass Violence law, Chatt Prep referred Doe straight to police (the SRO) and he was arrested, handcuffed, and sent to juvenile detention for a felony of threat of mass violence.[2] On the school-side, he was removed from school, albeit briefly, until the principal ordered his return.

### *The Settlement and Request for Approval*

Today, to its credit, rather than putting the family and itself through litigation about police referral procedures, alleged lack of training, the application of Threat of Mass Violence law to a person with his disability, and the lack of a threat assessment, Chattanooga Prep has reached a

---

[2] The school district's principal, the Plaintiff alleges, was "apoplectic" and "cussed [the SRO] up and down" for the arrest, but it was too late by that time.

settlement agreement with the family which provides for both training and a monetary payment. (See Attached for Approval).

### *The Training Piece on Mass Violence Law*

Plaintiff's Third Amended Complaint alleged a need for training. This is accomplished via the arms-length negotiated settlement agreement.

In particular, the training includes definitions of mass violence, context awareness of language, and consideration of students with disabilities. The training will address "purpose" of the threat assessment, "use of threat assessment," and an explanation of "context," with illustrative examples. Below is language in the settlement agreement setting forth objects of training which include the threat assessment:

*Understanding its purpose*: A team of school personnel and law enforcement personnel whose purpose is "to develop comprehensive intervention-based approaches to prevent violence, manage reports of potential threats, and create a system that fosters a safe, supportive, and effective school environment." Tenn. Code Ann. § 49-6-2701(a).

*Use of Threat Assessment.* A threat assessment is used when a threat of mass violence is made. It is *not* required for clearly innocuous statements (such as shooting a finger gun) or when violence is imminent (such as a student with a firearm at school).

*Context Matters.* The threat assessment team must "determine *whether* the threat of mass violence made by the student was a *valid* threat." Tenn. Code Ann. § 49-6-3401(g)(5)(emphasis added). Only *valid* threats must be reported by the director of schools or head of a public charter school outside of the threat assessment team to law enforcement. Tenn. Code Ann. §49-6-4301(a)(3). Only *valid* threats must be reported by the director of schools or head of a public charter

school outside of the threat assessment team to law enforcement. Tenn. Code Ann. §49-6-4301(a)(3).

Training shall feature the six principles developed by the Secret Service and Department of Education for threat assessments. Here, Plaintiff believes principle 6 is particularly important to the First Amendment because it distinguishes criminalization of *words* and asks instead whether the student actually *poses* a threat:

**Principle 1** "Targeted violence is the end result of an understandable, and oftentimes discernible, process of thinking and behavior."

**Principle 2** "Targeted violence stems from an interaction among the individual, the situation, the setting, and the target"

**Principle 3** "An investigative, skeptical, inquisitive mindset is critical to successful threat assessment."

**Principle 4** "Effective threat assessment is based on facts, rather than characteristics or 'traits.'"

**Principle 5** "An 'integrated systems approach' should guide threat assessment investigations."

**Principle 6** "The central question of a threat assessment is whether a student *poses* a threat, not whether the student *made* a threat."

*Confidentiality*: The threat assessment team's information, including that received by the law enforcement team member, is subject to the privacy laws, including Family Educational Rights and Privacy Act (FERPA) (20 U.S.C. 1232g).

### *The Compensation Piece to John Doe*

Plaintiff has also obtained compensation for Doe, in the amount of one hundred thousand dollars ($100,000), which includes a standard .3333 attorneys' fee. The proposed settlement in this matter is reasonable and will provide Plaintiff with sufficient monetary compensation based upon the relevant facts and will allow all parties to move forward peacefully and avoid the continued expense of time and resources, as well as the uncertainty that would be incurred if the matter continued to trial.

Pursuant to Tenn. Code Ann. §§ 29-34-105, 34-1-104 and 34-1-121 the amounts are for the physical injury of sickness to Doe and are to be used in the best interest of the minor. It will be used for his education, counseling, transportation needs as they arise, and solely for *his* interests.

Plaintiff also submits the 1/3 attorneys' fees are more than reasonable, as they are actually less than standard hourly billings, and, upon information and belief, this case represents the first known settlement of a case under Tennessee's mass violence law. Understanding the relationship of First Amendment law, criminal law, and Tennessee's mass violence law took substantial study by counsel. The subject matter of preventing school shootings while protecting First Amendment rights is imminently important to the public. Counsel ordered and read books, watched videos, and studied FBI threat assessments and the writings of the leading figure in (Dewey Cornell of University of Virginia, who wrote *Comprehensive School Threat Assessment Guidelines: Intervention and Support to Prevent Violence*).

In short, the time and labor were substantial, as well as the difficulty of claims, while the risk was high given the uncertainty of relief. Here, Plaintiff's counsel accepted all the attorneys' fee risk of an unfavorable verdict in reliance upon a contingent recovery, ensuring the client's

family paid no fees up-front at all.  For all these reasons, Plaintiff requests the proposed settlement of the training and the $100,000 payment be approved as being in the best interest of the minor and that Defendant is dismissed with prejudice.

RESPECTFULLY SUBMITTED this 23rd day of May, 2025.

Respectfully submitted,

/s Justin S. Gilbert
Justin S. Gilbert
Gilbert Law, PLLC.
100 W. Martin Luther King Blvd, Suite 501
Chattanooga, TN 37402
Telephone: 423-756-8203
justin@schoolandworklaw.com


/s Buddy B. Presley
Buddy B. Presley, Jr. (BPR #013921)
1384 Gunbarrel Rd, Suite A
Chattanooga, TN 37421
(423) 826-1800

bpresley@presleylawfirm.com

## CERTIFICATE OF SERVICE

I, the undersigned, do hereby certify that on May 23, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt including defense counsel, Ms. Caitlin Burchette.

/s Justin S. Gilbert

JUSTIN S. GILBERT